UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| POPHAM DESIGN, SARL,<br><br>Plaintiff,<br><br>v.<br><br>F. SCHUMACHER & CO. and<br>MARY MCDONALD, INC.,<br><br>Defendants. | CIVIL ACTION NO. 1:16-CV-11429-GAO |

## [PROPOSED] ORDER GOVERNING ELECTRONIC DISCOVERY

The Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified in the Court's discretion or by agreement of the parties with the Court's approval.

3. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in any requested cost-shifting determinations.

4. The Parties recognize the importance the Court places on cooperation and therefore commit to cooperate in good faith throughout the matter, including with regard to discovery obligations and attempts to resolve discovery disputes.

5. ESI will be part of the discoverable material in this case and the parties agree to cooperatively exchange in reasonably usable form as described below non-privileged discoverable material and use reasonable and proportional efforts to identify, preserve, collect,

and produce relevant information.

6. Each party will take reasonable and good faith steps to prevent the loss, destruction, alteration, overwriting, deletion, shredding, incineration, or theft of any document or data the party knows, or reasonably should know, falls within the scope of Fed. R. Civ. P. 26(b)(1). This includes all documents and data in the party's possession, custody, or control, except as noted in the following paragraph.

7. Having considered the claims and defenses in this action, the parties agree the following categories of ESI need not be preserved absent a showing of good cause or relevance to the claims and defenses in this litigation:

    a. Unallocated, slack space, deleted data, file fragments, or other data accessible by use of computer forensics;

    b. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve;

    c. Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system or network (e.g., date last opened);

    d. Backup or archived data that is substantially duplicative of data that is more reasonably accessible elsewhere;

    e. Operating system files, executable files, network, server, or system logs;

8. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery

obligations in the present case. A party's loss or deletion of reasonably accessible data subsequent to the existence of a duty to preserve shall constitute good cause.

9. Paper documents shall be produced as TIFF images (consistent with the specifications in paragraph 11(a) below). The production shall include the appropriate Load/Unitization files which will, at a minimum, contain the following fields (described in TABLE 1):

    a. Beginning Production Number (ProdBeg);

    b. Ending Production Number (ProdEnd);

    c. Beginning Attachment Production Number (BegAttach);

    d. End Attachment Production Number, (End Attach);

    e. Custodian/Source;

    f. Confidentiality;

    g. Document Type;

    h. Page Counts; and

    i. OCR.TXT file.

10. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).

11. Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI productions:

    a. **General Document Image Format.** Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF") format or color JPEG format. TIFF files shall be single page and shall be named with a unique

production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    i. If any materials produced in TIFF format as set forth above are illegible, unreadable, or not fully viewable in the designated format, the receiving party may request the producing party to produce in an alternative format or in the document's native format. The producing party shall not withhold original, native files for such documents absent a showing that such production would be overbroad or unduly burdensome. Should such objections be asserted, the parties shall meet and confer on the reasonableness of the request as well as a reasonable and cost-effective means of providing the requested documents.

    ii. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape).

    iii. TIFFs will show any and all text and images which would be visible to the reader using the software that created the document (e.g. track changes in Microsoft Word documents, speaker's notes in Microsoft PowerPoint).

b. **Text-Searchable Documents**. Optical Character Recognition (OCR) acquired text files are to be produced concurrently with TIFF images, linked

in the data load file. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file. In these instances, a text file will be produced using OCR in lieu of extracted text. The producing party agrees to make reasonable efforts to ensure the accuracy of the OCR text file. When subjecting documents to an OCR process, the settings of the OCR shall maximize test quality over process speed. Any settings such as "auto-skewing" or "auto-rotation" should be activated when documents are OCR'd.

c. **Footer.** Each document image shall contain a footer with a sequentially ascending production number. File names for TIFF images shall match the production number assigned to the image.

d. **Native Files.** A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format. Any native files that are produced shall be produced with all extracted text and applicable metadata fields set forth in the table below. The producing party shall provide Bates labeled slipsheets in conjunction with production of native files.

e. **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

f. **Replacement Files:** Any documents that are replaced in later productions shall be clearly designated as such, by appending a "- R" to the bates/production number prefix and by a letter accompanying the production clearly designating such documents as replacements.

g. **De-NISTing:** Electronic file collection shall be "De-NISTed," removing commercially available operating system and application files contained on the current NIST file list. Identification of NIST list matches shall be through MD5 Hash values.

h. **Duplicates**

　i. Electronic files shall be de-duplicated based upon calculated MD5 Hash values for binary file content. File contents only will be used for MD5 Hash value calculation.

　ii. Messaging files shall be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments. For families, the MD5 Hash is created on the combined hash values of the family members. In the event that electronic correspondence is produced, electronic threading may be utilized.

　iii. <u>Metadata</u>: The custodian metadata field of unproduced documents that are duplicates of produced documents shall be provided in the Load/Unitization file in either a multi-value CUSTODIAN field or as the OTHER CUSTODIANS field set forth in the table below.

ji. **Load/Unitization files:** There shall be two Load/Unitization files accompanying all productions: one will be the Image Load File and the other will be the Metadata Load File.

  i. Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

  ii. Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

  iii. Images will be delivered with an image load file in the Opticon (.OPT) file format.

  iv. The name of the image load file shall mirror the name of the delivery volume (e.g., ABC001.opt). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.).

  v. The load file shall contain one row per TIFF image.

  vi. Every image in the delivery volume shall be contained in the image load file.

  vii. The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

viii. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension.

ix. The metadata load file shall use Concordance default delimiters.

x. Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

xi. The first line of the .DAT file must be a header row identifying the field names.

xii. All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM" format.

xiii. A carriage-return line-feed shall be used to indicate the start of the next record.

xiv. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

xv. The name of the metadata load file shall mirror the name of the delivery volume (i.e., ABC001.dat).

xvi. The volume names shall be consecutive for each produced source. (i.e., ABC001, ABC002, et. seq.).

~~k~~j. **Metadata fields**: Except as otherwise set forth herein, ESI shall be produced to the requesting party as Static Images together with a Load/Unitization file

that contains the available Metadata fields described below on the document level. If available and not privileged, the following fields associated with each electronic document including the body of the document, shall be produced in the appropriate Load/Unitization file:

| Field Name | Description | Doc Type[1] |
|---|---|---|
| BEGBATES | First Bates number of each document being produced | All |
| ENDBATES | Last Bates number of each document being produced | All |
| BATESRANGE | Full Bates Number range (production number) | All |
| PARENTBATES | Begin Bates number for the parent email of a family (will not be populated for documents that are not part of a family) | All |
| BEGATTACH | First Bates number of family range (will not be populated for documents that are not part of a family) | All |
| ENDATTACH | Last Bates number of family range (will not be populated for documents that are not part of a family) | All |
| CUSTODIAN | Name of person or data source (non-human) from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.) Department or organization name for non-electronic documents or documents that are accessible for editing by more than a single user on a shared network drive. | All |
| FROM | Sender of an email | Email |
| TO | Addressee(s) of an email | Email |
| CC | Recipient(s) copied on an email | Email |
| BCC | Recipients blind copied on an email | Email |
| SUBJECT | Subject line of the email | Email |
| DATESENT | Date/time the email was sent | Email |
| DATERECEIVED | Date/time the email was received | Email |
| AUTHOR | Author of document | Edocs |
| DATECREATE | Date the document was created | Edocs |
| DATELASTMOD | Date the document was last modified | Edocs |
| FILESIZE | Size of application file document/email in KB | All |
| FILEEXT | File extension of the native file | Edocs |
| FILENAME | Name of the application file, including file extension | Edocs |
| PAGECOUNT | Number of pages of each individual document | All |
| DESIGNATION | Confidentiality designation assigned to the document pursuant to any confidentiality/protective order in the case | All |
| NATIVE FILE | Link to the native email or application file | All |
| HASH VALUE | Hash value of each email or application file | All |

---

[1] As used herein, "Edocs" refers to all non-email ESI.

| TEXT | File path for OCR or Extracted Text files | All |
|---|---|---|
| OTHER CUSTODIANS | Unless CUSTODIAN is a multi-value field, additional custodians who possessed a duplicate copy of an email or application file (if de-duping across custodians) | All |

12. **Embedded Objects**: Objects embedded in Microsoft Office documents and .RTF shall be extracted as separate documents and produced as attachments to the document.

13. **Compressed files**: Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

14. The parties shall cooperate to identify relevant document custodians, proper search terms, and proper time frames for ESI and Edoc requests.

15. A party may object to a request for production of ESI that is not reasonably accessible because of undue burden or cost.

16. If asserting an objection to an ESI or Edoc request, the responding party shall inform the requesting party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the requesting party an opportunity to propose an alternative means of compliance with the request, including payment of all or part of the costs of retrieving the information.

17. The parties shall work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the court. Issues shall be raised promptly, in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The parties shall use their best efforts to raise any objections or other requests related to a production within thirty (30) days of receipt of that production. In any event, the parties must raise any objections or other issues sufficiently in

advance of the close of discovery to permit good faith negotiations to resolve the matter and briefing of any related motion such that the court has a reasonable time to rule thereon prior to the close of discovery.

18. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI or email is not a waiver in the pending case or in any other federal or state proceeding.

19. Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal or Local Rules.

DATED this _____ day of _____, 20167.

SO ORDERED:

_____
George A. O'Toole, Jr.
United States District Judge